## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRIAN SALSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | No. 15-1084-JWL |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff applied for DIB and SSI benefits, alleging disability beginning March 31, 2008.[1] (R. 11, 164, 171). Plaintiff exhausted proceedings before the Commissioner, and

---

[1]At the hearing, Plaintiff amended his onset date to October 12, 2012. (R. 11, 31).

now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the Administrative Law Judge (ALJ) erred in finding that Plaintiff can frequently handle and finger bilaterally, and in support of that allegation, he also argues that the totality of the evidence supports the credibility of Plaintiff's allegations of symptoms and that the ALJ should have ordered another consultative evaluation regarding Plaintiff's ability to handle and finger.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

2

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the decision below.  Because Plaintiff argues that the

ALJ's finding regarding fingering and handling is erroneous, in part, because the ALJ

failed to properly develop the record and because the totality of the evidence supports the

credibility of Plaintiff's allegations of symptoms, the court addresses the ALJ's duty to

develop the record and his credibility determination before it addresses the finding

regarding fingering and handling.

## II.    Duty to Develop the Record

Plaintiff points to the vocational expert's testimony that an individual who is

limited to only occasional fingering and handling would be unable to perform any

competitive work, and argues that Plaintiff's ability to finger and handle is therefore

critical to a determination of disability in this case.  (Pl. Br. 10).[2]  He argues, then, that "a

---

[2]Plaintiff did not number the pages of his Brief in this case, so the court relies upon
the page numbering supplied by the software it uses to read the .pdf files downloaded
from the court's CM/ECF system.

consultative examination would have been helpful to measure [Mr.] Salsbury's manipulative limitations," but that, instead, the ALJ erroneously relied upon a finding of "good grip strength" and "preserved dexterity" despite that the evidence of preserved dexterity was stale and that there was record evidence of a weak grip bilaterally.

The Commissioner argues that the ALJ has broad latitude in securing a consultative examination, and that there was already a consultative examination in the record upon which the ALJ properly relied.  (Comm'r Br. 5) (citing Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (10th Cir. 1990)).  She argues that Plaintiff's amendment of his alleged onset to a date four months after the consultative examination does not render the examination stale, especially absent evidence of trauma, injury, or other event clearly demonstrating a significant deterioration in his condition which would require further examination.  Id.

As the Commissioner suggests, she "has broad latitude in ordering consultative examinations."  Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997).

> [But, t]he ALJ has a basic obligation in every social security
> case to ensure that an adequate record is developed during the
> disability hearing consistent with the issues raised.  This is
> true despite the presence of counsel, although the duty is
> heightened when the claimant is unrepresented.  The duty is
> one of inquiry, ensuring that the ALJ is informed about facts
> relevant to his decision and learns the claimant's own version
> of those facts.

Henrie v. U.S. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993) (citations, quotations, and brackets omitted).  Further, under 20 C.F.R. § 404.1512(e), "[w]hen the evidence [the agency] receive[s] from [a claimant's] treating physician or psychologist or other medical source is

inadequate for [the agency] to determine whether [the claimant is] disabled, [the agency] will need additional information to reach a determination or a decision."

Cowan v. Astrue, 552 F.3d 1182, 1187 (10th Cir. 2008).

"Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial.  Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."  If []he does so, then the ALJ's duty to order a consultative examination arises. "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment."

Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting Hawkins v. Chater,

113 F.3d 1162, 1167 (10th Cir. 1997)) (citations omitted).

In this case, it is clear that Plaintiff has presented evidence of severe physical

impairments which require a consultative examination in order to evaluate them properly.

And, a consultative examination was ordered and completed on July 21, 2012.  (R. 407-

10).  Plaintiff argues however, that he alleges an onset of disability on October 12, 2012,

that the record evidence demonstrates a decline in functioning after the consultative

examination which is in the record, and that another consultative examination was

therefore necessary to document the decline in functioning and to allow the ALJ properly

to evaluate Plaintiff's ability to handle and finger.  The court does not agree.

Plaintiff alleges a decline in functioning after July 2012, but as the Commissioner

points out, Plaintiff does not cite, and the record does not contain, evidence of trauma,

injury, or other event clearly demonstrating a significant deterioration in Plaintiff's

6

condition.  Moreover, the evidence to which Plaintiff appeals to suggest a deterioration in functioning was in the administrative record before the ALJ when he made his decision in this case, and was specifically considered and discussed in the decision.  (Pl. Br. 15) (citing R. 483-503 (Exs. 17F, 18F[3])); see also (R. 17-18) (discussing Dr. Hu's and Dr. Knappenberger's treatment records, and citing Exs. 17F and 18F).  Dr. Knappenberger's treatment notes contain a report of a physical examination, a history of present illness, and an assessment and plan, in the record of each visit.  (R. 487-88, 495-96, 501-02).  Dr. Hu's treatment records include a letter report to Plaintiff's referring physician, dated October 30, 2012, detailing Plaintiff's initial visit, and the letter relates Plaintiff's background and medical history, a report of his physical examination and neurological examination, and an "Assessment/Plan" which includes the results of the medical testing performed by Dr. Hu.  (R. 481-82).  Plaintiff simply does not suggest what additional information, which was not already in the record and which was necessary in order to make a decision in this case, would be provided by another consultative examination.

Further, Plaintiff's allegation of a decline in functioning after July 2012, is not fully supported by the record to which he appeals.  Dr. Figuerres's treatment note dated

---

[3]The court notes that Exhibit 18F consists of the treatment notes from Tallgrass Orthopedic & Sports Medicine, and includes notes of office visits with both Dr. Knappenberger and Dr. Figuerres.  (R. 487-507).  However, the cover letter under which Plaintiff's counsel submitted the records to the agency identifies the "Provider" as Dr. Knappenberger (R. 486), the exhibit is identified in the index of the administrative record as "Office Treatment Records . . . from Kurt Knappenberger, M.D." (R. Index3), and the ALJ attributed all of those records exclusively to Dr. Knappenberger.  (R. 18).  Plaintiff does not allege error in this regard, and the court will not consider that possibility.

October 12, 2012 indicates that the onset of Plaintiff's bilateral hand pain was gradual and that there was no injury.  (R. 491).  Dr. Knappenberger's note dated February 12, 2013 indicates the onset of Plaintiff's left wrist pain was years ago.  (R. 495).  Dr. Knappenberger's note dated January 30, 2013 indicates that the onset of Plaintiff's bilateral hand pain was months ago, the problem was unchanged, and there was no injury.  (R. 501).  Finally, Dr. Illif's treatment note, dated August 22, 2012 states that Plaintiff has a "hx [(history) of] carpal tunnel, dx [(diagnosed)] in [(the month is illegible--perhaps February)] 2006."  (R. 414).  Plaintiff has not demonstrated that another consultative evaluation was necessary or helpful to the ALJ's decision regarding disability.

## III.    Credibility

In two paragraphs in a single page of his Brief Plaintiff argues, based upon Plaintiff's reports, the EMG report, and Dr. Hu's, Dr. Figuerres's, and Dr. Knappenberger's medical records, that the "totality of the evidence supports [Mr.] Salsbury's credibility."  (Pl. Br. 12).  The Commissioner did not address this argument, and asserted that other than the issues of Plaintiff's fingering and handling, and the ALJ's duty to develop the record, Plaintiff "has waived any other challenges."  (Comm'r Br. 2 n.1) (citing Anderson v. Dep't of Labor, 422 F.3d 1155, 1174, 1182 n.51 (10th Cir. 2005) (because Plaintiff did not raise an issue in his opening brief, it is waived)).

The court finds that Plaintiff clearly raised the issue of credibility in his opening brief, and will address the issue despite the Commissioner's failure to respond regarding it.  However, although Plaintiff clearly raised the issue of credibility in his opening brief,

8

it is equally clear that he did not allege a specific error <u>in the ALJ's credibility finding</u> in any meaningful way.  He did not address any of the facts or factors relied upon by the ALJ in discounting the credibility of Plaintiff's allegations of symptoms.  He did not argue that the facts and factors relied upon by the ALJ <u>cannot</u> support the ALJ's credibility determination, and he did not argue that other facts or factors negate or preclude the ALJ's credibility determination.  Rather, he merely cited his own reports, the EMG report, and Dr. Hu's, Dr. Figuerres's, and Dr. Knappenberger's medical records, which in his view support the credibility of his allegations, and asserted that the "totality of the evidence supports [Mr.] Salsbury's credibility."  (Pl. Br. 12).  An argument presented in such a way is not really an allegation of error in the ALJ's decision.  At base, it is an invitation to the court to reweigh the evidence regarding credibility and to substitute its judgment in that regard for the judgment of the Commissioner.  The court may not do so.  <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

The court's review of an ALJ's credibility determination is deferential, and that determination is generally treated as binding on review.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.  Here, the ALJ made a credibility determination--finding that Plaintiff's allegations of symptoms "are not entirely credible."  (R. 17).  He explained the legal standard controlling his credibility determination, and discussed the evidentiary

9

bases for that determination.  (R. 16-19).  The court may not reweigh the evidence as

discussed above, and it will not produce an argument for Plaintiff that Plaintiff did not

develop himself.  The court finds no error in the ALJ's credibility determination.

**IV.      Frequent, Rather than Occasional Handling and Fingering**

Plaintiff argues that the evidence supports an ability for only occasional handling

and fingering, not frequent handling and fingering as found by the ALJ.  (Pl. Br. 10).  He

argues that the ALJ "limited [Mr.] Salsbury to frequent, rather than occasional, handling

and fingering because [Plaintiff] had good grip strength and preserved dexterity."  Id.  He

argues that the ALJ's findings of preserved dexterity and good grip strength are erroneous

because they relied upon mischaracterizations of the evidence and they ignored contrary

evidence.  Id. at 10-11.  He argues that the only evidence of preserved dexterity is from

the consultative examination in July 2012 which is stale because it predates the amended

alleged onset date by four months.  (Pl. Br. 11).  He argues that the evidence of good

dexterity is also contradicted by the EMG showing significant medial and ulnar nerve

damage, by Dr. Hu's and Dr. Knappenberger's recommendations regarding surgery, and

because Dr. Figuerres instructed Plaintiff to use padding when performing fine motor

activities.  Id.

Plaintiff also argues that the ALJ's finding of good grip strength is erroneous

because medical records report decreased grip strength bilaterally on January 30,

February 12, and April 30, 2013, and because the ALJ found that Plaintiff exhibited weak

grasp and hold in both hands.  Id.  He explains that, in his view, this evidence "suggests a

worsening in [Mr.] Salsbury's condition," and "undermines the ALJ's justification for limiting [Mr.] Salsbury to frequent, rather than occasional, handling and fingering." Id. at 11-12.

The Commissioner explains that the term "frequent" as used in a Social Security decision is a term of art meaning between one-third and two-thirds of a workday. (Comm'r Br. 2-3) (citing Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5). She summarizes the record evidence supporting the ALJ's finding regarding handling and fingering, and argues based on this evidence that the ALJ reasonably limited Plaintiff to a range of light work that required handling and fingering frequently, but not constantly. (Comm'r Br. 3-4).

Both parties agree that the ALJ found that Plaintiff is capable of frequently handling and fingering bilaterally. Plaintiff does not argue that the ALJ failed to apply the correct legal standard in making the RFC assessment, but he argues that the evidence will support a finding, of at most, the ability to handle and finger occasionally ("from very little up to one-third of the time" SSR 83-10, 1983 WL 31251, at *5). The question the court must answer then, is whether the record evidence supports the ALJ's finding.

In his decision, the ALJ considered and summarized the evidence relating to Plaintiff's wrist and elbow impairments and his ability to handle and finger. He noted that the July, 2012 physical examination revealed negative Tinel's and Phalen's tests bilaterally, 80 and 60 pounds of grip strength in his right and left hands respectively, decreased range of motion in his wrists, but normal fine fingering, and the abilities to pick

up a coin, open a door, and fasten a button. (R. 17) (citing Ex. 5F (R. 405-11)). The ALJ

summarized Dr. Hu's and Dr. Knappenberger's treatment notes:

> The claimant completed a motor nerve study, sensory nerve study, and
> EMG in October 2012 and was found to have abnormal results. The
> claimant had bilateral median entrapment neuropathy at both wrists, right
> more than left; bilateral ulnar entrapment neuropathy at the ulnar grooves,
> right more than left. He had no cervical radiculopathy. (Exhibit 17F, page
> 11) Analysis from Dr. Hu noted that the claimant reported weakness and
> numbness in his hands for 15 to 20 years. He denied dropping objects from
> either hand and denied upper extremity weakness. However, bending the
> elbow could significantly aggravate the hand paresthesias and he also had
> mild decreased dexterity. Driving did not aggravate his symptoms. He had
> bilateral elbow pain, more than wrist pain. He denied neck pain and
> cervical radicular symptoms. (Exhibit 17F, page 9) Dr. Hu recommended
> that the claimant reconsider surgery, given his EMG results.
>
> Kurt Knappenberger, M.D. recommended surgery for his right carpal tunnel
> syndrome. The claimant had marked degenerative joint disease in his left
> upper extremity. The claimant had no atrophy and no scars on his wrists.
> He had tenderness in left wrist dorsal compartment. He had a positive
> DeQuervain's test at the left wrist. The claimant had marked degenerative
> joint disease in the left wrist but only conservative treatments were
> recommended for it. (Exhibit 22F) In April 2013 the claimant's left wrist
> pain was unchanged. The claimant is right hand dominant. He also
> reported right elbow pain and right wrist pain. On examination the claimant
> had pain free normal range of motion in his right wrist and decreased active
> range of motion in his left wrist. Bilateral upper extremity strength was
> normal. He had weak grasp and hold in both hands. The claimant was to
> begin using Nabumetone. (Exhibit 18F)

(R. 17-18). The ALJ noted that in January 2013 Plaintiff reported to his treatment

provider that he plays Solitaire. (R. 18). The ALJ explained, "because of the history of

problems with the claimant's hands and wrists, I have limited him to only frequent

handling bilaterally." (R. 19). And, "The claimant has been shown by EMG to have

some problems with his wrists but he continues to have good grip strength. His dexterity was preserved." Id.

The evidence clearly supports the ALJ's findings regarding good grip strength and preserved dexterity. The 2012 consultative physical examination revealed negative Tinel's and Phalen's signs, grip strength bilaterally greater than 60 pounds, normal fine fingering, and ability to pick up a coin, open a door, and fasten a button. (R. 408, 410). That report specifically concluded that "grip strength and dexterity are preserved." (R. 410). As noted above when considering the ALJ's duty to order a consultative evaluation, Dr. Figuerres's, Dr. Knappenberger's, and Dr. Illif's treatment records do not support Plaintiff's allegation of decline in functioning after July 2012. (R. 414, 491, 495, 501). Dr. Hu's reports of no cervical radiculopathy, and a denial of upper extremity weakness and of dropping things, tend to support the ALJ's findings. And, Plaintiff's reported ability to play Solitaire tends to support the ALJ's findings.

Moreover, all of the evidence upon which Plaintiff relies to suggest error in the ALJ's findings was considered and summarized by the ALJ. And, Plaintiff's appeal to Dr. Figuerres's instruction to use padding when performing fine motor activities, rather than suggesting a reduction in dexterity, suggests that Dr. Figuerre also believed Plaintiff is able to perform fine motor activities if given appropriate accommodation.

As is almost always the case, this record contains conflicting evidence which suggests both that Plaintiff can handle and finger frequently, and that he cannot. However, that evidence does not point only one direction. "The possibility of drawing

13

two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 4th  day of January 2016, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**